*Second Judicial District.'*

In the Court of Common Pleas of Lancaster County.

---

## J. MILLER RAUB. *v.* J. S. EAKIN, DEFENDANT, AND CHRISTIAN WALTER, GARNISHEE.     •

1. Where the testimony produced in the depositions taken in a proceeding to dissolve a foreign attachment, appears to establish the fact that the defendant was a resident of this commonwealth at the time the attachment issued, the attachment will be dissolved.

2. No order for the allowance of a counsel fee and costs to a garnishee will be made, where the record shows no appearance of counsel, no interrogatories filed, nor answers prepared on the part of the garnishee.

**Foreign attachment. Rule to show cause of action, and why the attachment should not be dissolved and a reasonable counsel les allowed garnishee &c.**

Opinion delivered January 17, 1874, by

LIVINGSTON, P. J. The act of assembly, under which writs of foreign attachment are issued in Pennsylvania, declares "that writs of foreign attachment may be issued against the real or personal estate of any person not residing within this commonwealth, and not being within the county in which such writ shall issue, at the time of the issuing thereof."

Foreign attachment, therefore, is a remedy against debtors that are absent and non-resident in the commonwealth, in and by which the non-resident debtor is treated as having merely broken his contract, and his goods are attached to enforce his appearance. In order, therefore, to warrant the issuing of a writ of foreign attachment, the debtor must be a non-resident at the time it issues.

Residence is the act, the state, or the habit of dwelling, or abiding in a place; the act, or state of being a resident—habituary or inhabituary. It is a question made up of *fact* and intention. Residence (says Burrill,) imports not only a personal presence in a place, but an attachment to it, by those acts or habits which express the closest connection between a person and a place, as by usually sitting or lying there, &c.

A resident, therefore, is a person coming into a place with *intention* to establish his domicil or permanent residence there, and in consequence actually remains there. Time is not so essential as the intent executed. There is no absolute *rule* as to the *time* required to acquire a residence that is to be governed by the peculiar circumstances surrounding each case, and the supreme court has, on several occasions, decided that twelve months was sufficient.

The main question, therefore, in the case before us is, was J. S. Eakin, the defendant, at the time of issuing this writ of foreign attachment, a resident of this commonwealth or a non-resident? If a resident the rule must be made absolute and the attachment dissolved. If a non-resident the rule must be discharged and the attachment allowed to remain in force.

Considerable testimony has been taken and presented on the argument of the rule by the learned counsel for plaintiff, with great force, most of which seems to have been expressly intended to inform the court that the defendant is a gambler and a humbug, and that he accompanied the circus owned by plaintiff, and under a lease from him, exhibited a snake, parrot, kangaroo, a giantess, who was not just exactly as high as he represented her, a Circassian woman and some mice, and played "three card monte," which one of the learned witnesses informs us, and, we have no doubt he speaks from sad experience, is a game of chance, in which the party betting has no chance of winning. Not a particle of his testimony has anything to do with the case before the court, except to show, that so far as character and respectability are concerned, these parties stand, by the plaintiff's own showing, about upon an equality, and to satisfy us that we need not search for saints among the proprietors of a circus, or the side show accompanying it, by virtue of a lease from the proprietor, who undertakes to advertise it for the lessee. The only testimony produced by plaintiff, relevant to, or bearing upon the issue, is the declaration of defendant himself, made to several attachees of the circus while traveling with them during their traveling season. O. P. Hart states that defendant told him that his permanent residence was in, Western Virginia, that he owned real estate there, and his mother, a widow, resides upon it, and that he had received letters from Eakin, in which he wrote "I am at home, in Virginia." Hiram T. Day states that defendant told him that his permanent residence was in Virginia, that he owned real estate there, and his mother was living upon it. Thomas Stewart states that he became acquainted with defendant in Pennsylvania, but knows nothing about his permanent residence. Benjamin Reese, states that he met defendant at Towanda, Pa., that defendant a few weeks since was in Baltimore, and last summer told him his residence was in Virginia, and Andrew Leibly states that he became acquainted with defendant in Pennsylvania, in July last, and that he traveled through Maryland, Virginia, New York and Pennsylvania with the circus, and told him his parents lived in Virginia, and that was his home. These are all declarations of defendant, none of which were made under the sanction of an oath. While on the part of the defendant, we have his own testimony, taken under rule of court, on oath and cross-examined by plaintiff, in which he states that he is twenty-four years of age, a showman by profession, having been engaged in that business about four years. That he resides permanently in Philadelphia, Pennsylvania. That his business compels him to travel a great deal, and he is sometimes. out of Pennsylvania, where he resides. That he has been in the habit of spending his winters in Philadelphia, and claims that city as his permanent residence. He is a single man, was born in West Virginia, where his parents still reside. He owns no real estate in either state, and although entitled to vote in Pennsylvania has never voted. That he went

to Baltimore, Md., about six weeks before he testified, and intended to return to Philadelphia about the last of December, and that he spent his winters in Philadelphia, because that is his home. He also produces another witness, J. H. Joseph, who testifies, that he has known Eakin for four years, and from his own knowledge, knows his residence has been in Philadelphia, Pa. during all that time, and that Philadelphia is his permanent home.

The testimony produced, therefore, appears to us to establish the fact, that Eakin, the defendant, was a resident of this commonwealth, and not a non-resident when the attachment issued, and therefore, the rule must be made absolute, and the attachment dissolved.

We are also asked to direct a reasonable counsel fee and costs for garnishee; but as these proceedings have been on the part of the defendant, and not the garnishee, and the record shows no appearance of counsel for garnishee, no interrogatories filed, nor answers prepared on his part, we decline making such order for counsel fee. The payment of the costs in the foreign attachment, is of course thrown upon plaintiff, by dissolving the attachment. Rule made absolute and attachment dissolved.

*F. L. Steinmetz*, Esq., for plaintiff; *T. J. Davis*, Esq., for defendant and garnishee.

---

*Twenty-fifth Judicial District.*